COMMONWEALTH *vs.* WILBERT ANDERSON.

Suffolk.   May 12, 1975. — September 8, 1975.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Jury and Jurors. Practice, Criminal,* Examination of jurors. *Evidence,* On cross-examination, Contradiction of witness. *Error,* Whether error harmful.

At a criminal trial of a black defendant, evidence that the prosecutor exercised his peremptory challenges with the result that an all-white jury was chosen and that he stated at a bench conference, when defense counsel complained that the prosecution was using its peremptory challenges to exclude blacks, that defense counsel "wouldn't give me an Irishman all morning" was insufficient to overcome the presumption that the challenges were exercised in good faith to obtain an impartial jury. [464-465]

At a criminal trial, the circumstance that a black defendant was charged with a crime of violence against white victims did not, without more, constitutionally require specific interrogation of prospective jurors on the issue of racial prejudice. [465-466]

Although a victim's prior inconsistent statement to a grand jury as to another victim's intoxication at the time of a crime was admissible and relevant to the identification of the defendant, the exclusion of the statement did not prejudice the defendant where there was other evidence as to the intoxication of the victim and the defendant was identified by three other witnesses. [466-467]

Although it was improper for a prosecutor to elicit in testimony by a police officer the names of two defendants given the officer by an identifying witness, the error was insignificant in light of the overwhelming evidence against the defendant. [467]

INDICTMENTS found and returned in the Superior Court on October 11, 1973.

The cases were tried before *Tamburello,* J.

*Stephen Hrones* for the defendant.

*Sandra L. Hamlin,* Assistant District Attorney, for the Commonwealth.

GOODMAN, J.    The defendant's bill of exceptions attacks his convictions, after a trial by jury, on two indictments

charging armed robbery. The defendant complains of the jury selection procedure and of two evidentiary rulings.[1] Such facts and evidence as are necessary to understand the various contentions which we discuss will be set out therewith.

1. *Jury selection.* The defendant is black; the two victims are white; two witnesses who identified the defendant are black. One of the witnesses had been shot by a co-defendant (whose case is not before us) ; the other testified she saw the incident from her apartment window and that (as stated in the bill of exceptions) "she had seen Anderson around the project . . .. He was known to her by his nickname . . .."

The defendant objects to the prosecuting attorney's exercise of his peremptory challenges with the result that an all-white jury was chosen.[2]

The defendant cites *Swain* v. *Alabama*, 380 U. S. 202, 223 (1965), which analyzes the history and function of the peremptory challenge and holds that a state may "insulate from inquiry the removal of Negroes from a particular jury" although it results in the exclusion of all but whites from that jury. The Supreme Judicial Court has applied this rule in *Commonwealth* v. *Talbert*, 357 Mass. 146, 147 (1970), and *Commonwealth* v. *Cook*, 364 Mass. 767, 770 (1974). See *Commonwealth* v. *King*, 366 Mass. 6, 8-9 (1974). The *Swain* case has referred to this rule as a "presumption" in favor of the prosecution which may be overcome where the peremptory challenge is used systematically as a technique to exclude blacks from juries generally and is thus "used to deny the Negro the same right

---

[1] Another contention, embraced in a single sentence in the defendant's brief, and criticizing, without regard to context, a particular phrase in the charge is trivial — assuming even, which is not the case, that the exception as set out in the bill of exceptions sufficiently indicates the portion of the charge to which objection is made.

[2] There was no motion to dismiss the jury panel (see *Commonwealth* v. *Talbert*, 357 Mass. 146, 147 [1970]), and the exception taken would seem to relate only to the last peremptory challenge. We prefer, however, to dispose of the contention on its merits.

and opportunity to participate in the administration of justice enjoyed by the white population." *Swain* v. *Alabama,* 380 U. S. at 224.

Whatever other circumstances, if any, might overcome the "presumption" and impel us to scrutinize the prosecution's peremptory challenges, it is clear that the remark made by the prosecuting attorney, to which the defendant points, is not of such a character. The remark was made during a bench conference when defense counsel complained that the prosecution was using its peremptory challenges to exclude blacks; the prosecuting attorney said: "These guys [referring to defense counsel] wouldn't give me an Irishman all morning. They have been kicking them off." It seems to us, as it probably did to the trial judge who was in a better position to appraise the remark, that it was an inconsequential, though perhaps tasteless, quip — hardly sufficient to indicate a manipulation of the Commonwealth's right to peremptory challenges and a perversion of their purpose.

The defendant also argues that he was entitled to have the prospective jurors specifically interrogated on the issue of racial prejudice in this case of a violent crime where the defendant was black and the victims were white. However, the defendant suggests no distinction, and we see none, between this case and the recent case of *Commonwealth* v. *Lumley,* 367 Mass. 213, 214, 218, 223-224 (1975), in which the Supreme Judicial Court adhered to its position in *Commonwealth* v. *Ross,* 363 Mass. 665 (1973), cert. den. 414 U. S. 1080 (1973), that the circumstances of a black defendant and a white victim of a violent crime are not, without more, sufficient as a constitutional matter to require such interrogation,[3] although the Court of Appeals

---

[3] The court said: "However, as a practical matter, when a motion that prospective jurors be interrogated as to possible prejudice is presented, we believe the trial judge should grant that motion." *Commonwealth* v. *Lumley,* 367 Mass. 213, 216 (1975). It also pointed out that since *Ham* v. *South Carolina,* 409 U. S. 524 (1973), such motions were being granted routinely in the Superior Court. See G. L. c. 234, § 28, second paragraph, inserted by St. 1973, c. 919, and further amended by St. 1975, c. 335.

for the First Circuit had taken a different view in *Ross* v. *Ristaino*, 508 F. 2d 754 (1st Cir. 1974). See *Commonwealth* v. *Harrison*, 368 Mass. 366, 371, fn. 8 (1975), for a discussion and the subsequent history of *Commonwealth* v. *Ross*, *supra.*

2. *Evidentiary rulings.* The defendant argues that the trial judge erroneously refused to permit defense counsel, while cross-examining one of the victims (Clemmons), to introduce evidence that he had testified before the grand jury that the other victim (Bradshaw) was "slightly intoxicated." Defense counsel offered this as a prior inconsistent statement to impeach Clemmons' testimony. Clemmons had testified in detail that he had had ten to twelve drinks and Bradshaw had had "about as much." The statement to the grand jury was admissible. Though it did not "directly contradict the testimony of the witness[, i]t is enough if its implications tend in a different direction." *Commonwealth* v. *Pickles*, 364 Mass. 395, 402 (1973), and cases cited. *Commonwealth* v. *Granito*, 326 Mass. 494, 500 (1950).

Defense counsel makes an ingenious, though somewhat oblique, argument that Clemmons' testimony as to Bradshaw's intoxication was not a collateral matter but related to the identification of the defendant, the main issue being tried, and that the trial judge, therefore, had no discretion to exclude the inconsistent statement. See *Commonwealth* v. *A Juvenile*, 361 Mass. 214, 218 (1972), citing *Commonwealth* v. *West*, 312 Mass. 438, 440 (1942). Whether or not we accept the defendant's argument, it is clear beyond a reasonable doubt that the exclusion of the inconsistent statement (which might well have been admitted, in any event) did not prejudice the defendant. In the unlikely event that the jury would have discounted Clemmons' testimony of the amount Bradshaw had drunk had this statement of opinion (see *Commonwealth* v. *Grossman*, 261 Mass. 68, 71-72 [1927]) been admitted, there was other evidence, both by Bradshaw and a police officer, as to Bradshaw's intoxication. This evidence, of course, was unaffected by the inconsistency. *Commonwealth* v. *Thomp-*

*son,* 362 Mass. 382, 386 (1972). Hughes, Evidence, § 232, p. 257 (1961). Further, the apparently faultless identification evidence by the woman who witnessed the incident from her apartment, buttressed by the identification by the two other witnesses, which, from the bill of exceptions, does not appear to have been shaken, was overwhelming. See *Commonwealth* v. *Thompson, supra,* at 385-386.

It was obviously improper for the prosecuting attorney to elicit from the police officer the names of the two defendants given him by one of the identifying witnesses; and the prosecuting attorney makes no attempt to justify his course. However, there was neither an objection to the question nor a motion to strike the answer, which was obviously hearsay. Something more was required of defense counsel than a perfunctory "note my exception" after the answer had been given. Here again, moreover, the overwhelming evidence against the defendant makes the error insignificant.

*Exceptions overruled.*