COMMONWEALTH vs. JAMES T. LONG.

Norfolk. December 14, 1983. — April 5, 1984.

Present: GREANEY, C.J., BROWN, & WARNER, JJ.

*Witness*, Cross-examination. *Practice, Criminal*, Cross-examination by
prosecutor. *Evidence*, Judicial discretion, Failure to produce witness,
Relevancy and materiality. *Homicide*.

At the trial of a murder case, there was prejudicial error in permitting the
prosecutor, while cross-examining the defendant, to ask at least one
hundred times whether the defendant had heard particular testimony of
various witnesses. [708-710]
At the trial of a murder case, the judge did not err in allowing the prosecutor
to ask the defendant's wife whether the defendant "liked wearing his
knife." [710]
Although there was testimony at a murder trial that the defendant had been
wearing a knife at a wedding reception on the day of the murder, it was
improper for the prosecutor to ask a witness whether he had ever seen
a knife worn at a wedding reception. [710-711]

INDICTMENT found and returned in the Superior Court De-
partment on January 25, 1982.

The case was tried before *Alberti*, J.

*David Berman* for the defendant.

*Peter W. Agnes, Jr.*, Assistant District Attorney, for the
Commonwealth.

BROWN, J. The defendant appeals from his conviction of
second degree murder on an indictment charging first degree
murder. The defendant's most serious contention on appeal is
that it was error for the prosecutor to ask the defendant, on
cross-examination, in a long series of questions described
below, whether he had heard particular testimony of various
witnesses. The successive inquiries we regard as improper and
we reject the contention of the Commonwealth that the manner
of this prosecutor's questioning was merely a permissible

technique to focus a witness's attention on particular facts that the examiner wished to explore.

It is improper to ask a witness to comment on the credibility of other witnesses or his own testimony in the manner which was attempted in the instant case. *Commonwealth* v. *Ward,* 15 Mass. App. Ct. 400, 401 (1983). See *Commonwealth* v. *Barros,* 5 Mass. App. Ct. 887 (1977). "It has become a favorite gambit of some lawyers in civil and criminal cases to direct questions at a witness, during cross-examination, in an attempt to have the witness characterize the testimony of other witnesses as 'truthful' or 'lying.' This line of questioning is improper." *Commonwealth* v. *Ward, supra* at 401. The court in *Ward* also noted that by using this line of questioning, "a lawyer implies to a jury that differences in the testimony of the witness and any other witness 'could only be the result of lying and not because of misrecollection, failure of recollection or other innocent reason.'" *Id.* at 402, quoting from *United States* v. *Narciso,* 446 F. Supp. 252, 321 (E.D. Mich. 1977).

Unlike *Ward,* where the judge allowed but a single improper question, here there were at least a hundred improper questions on a cross-examination which covered over one hundred pages of the transcript. Throughout the entire cross-examination of the defendant the prosecutor repeatedly interspersed the question, "Did you hear [a particular witness] testify that . . . ?" Contrast *Commonwealth* v. *Reddick,* 372 Mass. 460, 463-464 (1977). Although the prosecutor did not expressly ask the defendant to characterize the witnesses' testimony as either false or true,[1] contrast *Commonwealth* v. *Collett, post* 913, 914 (1983), it is clear from the transcript that his purpose was *not* simply to get the defendant to focus his attention on particular facts, but to tempt the defendant to comment on inconsistencies between his testimony and that of the other witnesses.[2]

---

[1] On one occasion, however, when asked "[d]id you hear [a prior Commonwealth witness] testify that he saw you stab [the victim] twice," the defendant responded, "He's lying, sir."

[2] The following illustrates the flavor of the interrogation. The question — "Mr. Stokes testified on the stand that he was telling the truth, didn't he?" — was immediately followed after a "yes" answer with the question

Compare *Commonwealth* v. *Liebman,* 379 Mass. 671, 678 (1980). The defendant was questioned in this manner with respect to the testimony of almost every witness called at trial. On many occasions the defendant objected to this line of questioning; not all of the objections, however, were sustained.[3] See *Olson* v. *Ela,* 8 Mass. App. Ct. 165, 169 (1979). Compare *Commonwealth* v. *Shea,* 323 Mass. 406, 417 (1948). In most instances, even when an objection was sustained and the prosecutor was instructed to rephrase the question, the prosecutor repeated the question in almost identical terms. Based on the large number of transgressions, "whether intentional or not, the result of his continued failure to phrase his questions in a proper manner was to plant in the minds of the jurors the suggestion that either the defendant or the other witness was a perjurer." *United States* v. *Narciso,* 446 F. Supp. at 321. It was most improper for counsel to have attempted to communicate such impressions to the jury by innuendo through a series of questions. Cf. *Commonwealth* v. *Errington,* 390 Mass. 875, 880 (1984). Moreover, on several occasions, the prosecutor misstated the previous testimony of the witnesses.[4] Considering the frequency and manner in which these questions were put to the defendant, one is forced to conclude that the questions were asked either intentionally or with clear disregard of the defendant's rights. It is disingenuous for the Commonwealth to claim that the prosecutor simply was seeking to get the defendant to explain his testimony, as little or no effort was made to obtain any explanation.[5]

There is another problem with this particular trial tactic. Such questioning transforms the interrogation stage of the trial

---

whether there was "[a]ny reason Mr. Stokes would lie to the police." The defendant's objection to the latter question was sustained.

[3] The most often stated basis of the defendant's objections was: "Your Honor, what [the witness] testified is for the jury, and that's not my recollection of what he said. That would be a conclusionary statement anyway."

[4] On at least two such occasions, the judge after an objection, felt obliged to say, "That's not my memory," or words to that effect.

[5] The assistant district attorney arguing the case on appeal was not the prosecutor at trial.

into the phase traditionally reserved for argument and summation. The questions appear to have been essentially argumentative and should have been excluded on objection.[6] See Liacos, Massachusetts Evidence 71 (5th ed. 1981). See also *Commonwealth* v. *Liebman,* 379 Mass. at 678.

In light of the fact that the Commonwealth's evidence was not overwhelming,[7] it cannot be said that the prosecutor's conduct had a nonprejudicial and inconsequential effect on the deliberations of the jury. See *Pierce* v. *United States,* 86 F.2d 949, 952-954 (6th Cir. 1936). We think that the "interests of justice and judicial conscience demand a new trial in this case." *United States* v. *Narciso,* 446 F. Supp. at 328. Cf. *Commonwealth* v. *Smith,* 387 Mass. 900, 903 (1983).

We address briefly other issues which might arise on retrial.

1. As to the defendant's claim that certain prior inconsistent statements of a prosecution witness were erroneously excluded, see *Commonwealth* v. *Cadwell,* 374 Mass. 308, 313-314 (1978). See also *Commonwealth* v. *Anderson,* 3 Mass. App. Ct. 463, 466 (1975); *Commonwealth* v. *O'Neil,* 3 Mass. App. Ct. 768 (1975).

2. The judge did not err in allowing the prosecutor to ask the defendant's wife whether the defendant "liked wearing his knife." See and compare *Commonwealth* v. *White,* 367 Mass. 280, 284-285 (1975).

3. Although the Commonwealth was entitled to inquire whether a witness had seen the defendant wearing a knife at the wedding reception, compare *Commonwealth* v. *Monsen,*

---

[6] We agree with the defendant that the use of this kind of question is also a waste of time. Cf. *Commonwealth* v. *Shea,* 323 Mass. at 417. What the witness remembers about previous testimony is irrelevant. It is the jury's recollection of the testimony that matters.

[7] We summarize briefly the relevant facts. A senseless argument was precipitated by a chance encounter of two groups, the members of which had been drinking. The defendant apparently did not know the victim or his friends prior to the violent altercation. The defendant admitted that he had killed the victim, but claimed that he had acted in self-defense. There was evidence that the victim had provoked the attack and that immediately prior to the actual stabbing, the victim, holding a sheet metal hammer in his hand, was standing face-to-face with the defendant.

377 Mass. 245, 252 (1979), it was improper for the prosecutor to ask the witness whether he had ever seen a knife worn at a wedding reception. The relevance, if any, is not apparent, and the possible prejudice is obvious. Cf. *Commonwealth* v. *Felton,* 16 Mass. App. Ct. 63, 66 (1983) (advises that a "hard blow" must not be a foul blow).

4. The defendant claims that the judge erred in not allowing his counsel to comment on the failure of the Commonwealth to call one Jack Muldoon as a witness in its case-in-chief. See *Commonwealth* v. *Franklin,* 366 Mass. 284, 292 (1974). The decision whether to allow such comment is committed to the sound discretion of the trial judge. *Id.* at 294. There was no abuse of that discretion. See *Commonwealth* v. *Crespo,* 3 Mass. App. Ct. 497, 501 (1975).

5. As to the defendant's claim that the judge's charge trivialized the Commonwealth's burden of proof, see *Commonwealth* v. *Carballo,* 381 Mass. 227, 229-230 (1980). See also *Commonwealth* v. *Smith,* 381 Mass. 141, 143-146 (1980), and cases cited.

6. On the state of the evidence at the close of the Commonwealth's case, the defendant was not entitled to a directed verdict of not guilty on so much of the indictment as charged murder. See *Commonwealth* v. *Richards,* 384 Mass. 396, 406 (1981). See also *Commonwealth* v. *Fitzgerald,* 380 Mass. 840, 845 n.3 (1980).

7. As to the defendant's motion pursuant to Mass.R.Crim.P. 25(b)(2), 378 Mass. 896 (1979), see discussion in *Commonwealth* v. *Gaulden,* 383 Mass. 543, 555-556 (1981), and cases collected therein at 555 n.9.

*Judgment reversed.*

*Verdict set aside.*