## COMMONWEALTH *vs.* JOSE ALVARADO.

No. 98-P-656.

Hampden. November 16, 1999. - November 3, 2000.

Present: ARMSTRONG, C.J., KASS, & RAPOZA, JJ.

*Jury and Jurors. Practice, Criminal,* Jury and jurors, Assistance of counsel, Cross-examination by prosecutor. *Constitutional Law,* Assistance of counsel.

A Superior Court judge did not err in designating a certain juror as the alternate before deliberations began, upon learning that the juror had failed to disclose on the juror questionnaire that he had been acquitted in a recent assault and battery prosecution; the procedure, while not in conformance with G. L. c. 234A, § 68, ensured that the deliberating jurors were not influenced. [419-420]

Defense counsel at a criminal trial was not shown to be ineffective by reason of his tactical decisions in cross-examining a prosecution witness. [420-422]

At the trial of a criminal case, no reversible error appeared in questions posed to defense witnesses by the prosecutor or in the prosecutor's closing argument. [423-424]

INDICTMENTS found and returned in the Superior Court Department on July 27, 1995.

The cases were tried before *Bertha D. Josephson,* J.

*Patricia A. O'Neill,* Committee for Public Counsel Services, for the defendant.

*Deborah D. Ahlstrom,* Assistant District Attorney, for the Commonwealth.

ARMSTRONG, C.J. Jose Alvarado was convicted by a jury of assault and battery with a dangerous weapon and armed assault with intent to murder in connection with the shooting of two men in Holyoke on July 7, 1995. His appeal raises the following points.

1. *Designation of alternate juror.* After closing arguments, but prior to jury deliberation, the prosecutor informed the judge

that a District Court prosecutor had recognized one of the jurors as an individual acquitted three weeks before in an assault and battery prosecution. The juror had failed to disclose this information in response to a pertinent inquiry in the questionnaire filled out by the venire before jury selection. The judge confirmed the accuracy of the prosecutor's information without questioning the juror, so as not to affect his performance in that capacity. In response to the prosecutor's concern that the juror might be hostile to the Commonwealth, the judge reflected that, while she would have excused the juror from service had she known of the earlier prosecution at the time of jury selection, she was reluctant at that late stage of trial to discharge a juror whose participation might be needed for a verdict (there were only thirteen jurors at that point). The judge instead designated the juror as the alternate. Thus, the juror did not deliberate with the other jurors. The judge chose this path over defense counsel's objection.

Under G. L. c. 234A, § 68, alternate jurors are generally selected by random draw. The nonrandom selection in this case was irregular, but such an irregularity "shall not be sufficient to cause a mistrial or to set aside a verdict . . . unless the objecting party has been specially injured or prejudiced thereby." G. L. c. 234A, § 74. The defendant exercised only four of his six allotted peremptory challenges; "[t]hus no one objectionable to him served on [the] jury." *Commonwealth* v. *Stone*, 366 Mass. 506, 509 (1974). See *Commonwealth* v. *Olszewski*, 416 Mass. 707, 721 (1993), cert. denied, 513 U.S. 835 (1994). If the designation is treated as an effective discharge of the juror, this was done prior to the start of deliberations (see *id.* at 722 n.15; contrast *Commonwealth* v. *Connor*, 392 Mass. 838, 843, 847 [1984]), and the procedure followed ensured that the jurors could not have been influenced in their deliberations. Contrast *Commonwealth* v. *Sheehy*, 412 Mass. 235, 237-240 (1992). The judge did not abuse her discretion.

2. *Ineffective assistance of counsel.* The defendant complains that his trial counsel committed a critical error of judgment, violative of the standard of *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974), when, in cross-examining the Commonwealth's key witness, Felix Caballero, he elicited a statement allegedly made to Caballero by one Angel Medina — an eyewitness to the shootings — to the effect that the defendant

was at the scene and was the gunman who emerged from the back seat of the attack car and shot the two victims. This, the defendant argues, was the only eyewitness testimony to the defendant's presence at, and central role in, the shootings, and thus was monumentally damaging to the defense.

The argument does not take into account the strength of the case against the defendant and the imperative placed upon defense counsel to undermine Caballero's credibility. The evidence put the shooting in the context of a war between two gangs. In the attack car and the two other cars traveling with it were members of a gang called "La Familia," out on a mission of revenge against another gang, "Los Solidos," whose members had allegedly beaten up one "Pepe," a leader of La Familia. The La Familia members drove to Tokeneke Road, to an apartment complex that was a center for the Los Solidos gang. The victims testified that, from one car (a white Toyota, according to one of the victims), a man demanded that they declare their gang affiliation. Dissatisfied, apparently, with their answer denying any such affiliation, the man emerged from the back seat with a gun and shot them several times. Neither victim was able to identify the gunman, who had, they said, been masked, or had a hat obscuring his face. They were only able to describe his clothing, and one was able to identify the later-recovered gun. Fifteen minutes after the shooting, police apprehended the defendant roughly 1.8 miles from the scene. He was holding a sawed-off rifle that was confirmed by ballistics experts to be the weapon used in the shooting. The defendant, sweating profusely, claimed to have bought the gun for $20 from two men who had just driven up in a car. He was sweating, he said, because he had fled reflexively from the police cars converging on the area.

Caballero was a member of La Familia at the time of the shooting. He testified that Pepe had called a meeting of La Familia members to plan revenge for his earlier beating by members of Los Solidos. At the meeting, one of the leaders of the revenge party, Miguel Medina (Angel Medina's brother), asked the defendant "if he was going to do it," and the defendant responded, "Yes. Let's go. Let's do this." Miguel and Angel Medina, the defendant, and two others entered the lead car and drove off toward Tokeneke Road. According to Caballero, the defendant was a member of La Familia, and had gotten into the back seat of the lead car with the gun. Caballero

was in the third of the La Familia cars, which became separated form the lead car before the shooting.

The defendant testified later in the trial and acknowledged his one-time membership in La Familia. This he could not deny, as he was made to display the La Familia tattoo on his chest. However, he testified that he had quit La Familia several months before the shooting, and that on the day of the shooting he had been at a family birthday celebration — this was confirmed by family members — following which he had been driven by a friend to a McDonald's restaurant near the shooting scene. When the friend, who confirmed this, failed to return for him, he started walking home. While he was walking, a white Toyota drove up and he purchased the gun. The defense also put in evidence that Miguel Medina, who, according to Caballero, had led the revenge party, was in fact working at the time on his job as a security officer. (Medina's supervisor confirmed this, not from having seen Medina working, but from attendance cards.)

It was only Caballero's testimony that put the defendant and Miguel Medina in the lead car. All other incriminating evidence was consistent with the defendant's alibi. The defendant's counsel could reasonably see it as essential to the defense that he show Caballero's testimony to be a web of lies. This he attempted to do by comparing Caballero's grand jury testimony with that of the two victims who, as stated earlier, testified that the gunman had been the only person to emerge from the car. Caballero had told the grand jury a quite different version of the encounter, learned, he said, from Angel Medina, who, according to Caballero, had been in the rear seat with the defendant. In that account, the four occupants of the car other than the defendant had emerged from the car, without guns, to confront the two victims and to interrogate them as to gang affiliation. At the end, the defendant jumped out of the car with the gun and fired the shots. Combining this contradiction with the fact that Caballero had become an informer to win leniency on unrelated charges, the defendant's counsel sought to characterize Caballero as one who would say anything he thought could win favor with the police. This was a tactical choice, not an unreasonable one, despite relating a purported eyewitness account that depicted the defendant as the gunman. Such tactical choices, although they may not succeed, are not grounds for characterizing counsel as ineffective. See *Commonwealth* v. *Martino*, 412 Mass. 267, 289 (1992).

3. The defendant argues a number of points concerning the prosecutor's cross-examination of defense witnesses and his final argument to the jury. Although one or two of these points have some merit, none warrants reversal. We briefly touch on several of the defendant's arguments.

(a) Several of the prosecutor's questions on cross-examination took the form, "Did you hear [X] testify that [such and such] happened?" — a form that is the usual precursor to asking the witness to comment on the credibility of other witnesses. The latter, of course, is improper, as are questions designed to "tempt the defendant to comment on inconsistencies between his testimony and that of . . . other witnesses." *Commonwealth v. Long*, 17 Mass. App. Ct. 707, 708 (1984). There were few such introductory questions, however, in contrast to the *Long* case, and the purpose of some seems to have been "to get the [witness] to focus his attention on particular facts," *ibid.*, rather than to comment on the truth of previous testimony.

(b) The questions to Miguel Medina were proper. On cross-examination, Medina stated that he was a head of La Familia in about 1994, and initially agreed that he still had that position in July, 1995, but subsequently claimed that, because he was employed during that time, he no longer held the position of "head" in July. He also claimed that, as a person with "a high position" in the gang, he did not attend meetings, and that he was not aware that Pepe had called a meeting on July 7, 1995. The prosecutor could properly confront Medina with evidence showing that he did in fact attend meetings in 1995.

(c) Although the defendant's trial counsel denied that he had conducted a meeting at the jail with the defendant and Miguel Medina about three weeks prior to trial, the prosecutor satisfied the judge that he had a good faith basis for asking Medina whether there was such a meeting. The judge required the prosecutor to frame the question in a way that referred to the defendant's trial counsel simply as "another person." The answer to the question was negative. No harm was done. Obscuring trial counsel's identity, together with Medina's ready admission that he occasionally saw the defendant in the days prior to trial, made the question harmless.

(d) The several questions asked in cross-examination of the defendant that might have suggested to the jury facts adverse to the defendant for which no basis was shown were far less egregious than the question put in *Commonwealth v. Fordham*,

417 Mass. 10, 20 (1994). The judge struck one such question and instructed the jury that questions are not evidence. Other questions were answered in the negative.

The prosecutor's attempt to use hearsay to impeach the defendant's alibi testimony was particularly inappropriate. However, the defendant's objection to this line of questioning was sustained, and the judge's forceful curative instructions abated the prejudice. The defendant had a fair trial.

*Judgments affirmed.*