## COMMONWEALTH *vs.* FELIX COLON.

No. 04-P-632.

Worcester. January 4, 2005. - August 19, 2005.

Present: PERRETTA, COHEN, & KATZMANN, JJ.

*Evidence,* Cross-examination, Credibility of witness, Expert opinion, Sexual conduct. *Witness,* Cross-examination, Credibility, Expert. *Practice, Criminal,* Cross-examination by prosecutor. *Error, Harmless.*

At a criminal trial, the admission in evidence of an unredacted statement of the defendant, in which the defendant provided an explanation as to why the victim had accused him of the crimes at issue, did not, when combined with subsequent cross-examination on the statement, amount to improper comment on the credibility of the victim, where the statement was not the equivalent of commenting on the credibility of live testimony given by another witness under oath during a trial, and where any error in the admission of the statement was harmless, given the isolated nature of the questioning and testimony, and the strength of the Commonwealth's evidence. [305-309]

At the trial of indictments arising out of the sexual abuse of a minor, error, if any, resulting from the judge's refusal to strike, as unresponsive, an isolated statement made by the prosecution's expert witness during cross-examination was harmless, where the statement did little more than reinforce a proper medical opinion that went uncontested by the defense [309-311]; moreover, the statement did not improperly touch on the ultimate question whether the victim had been sexually abused, and did not constitute inadmissible hearsay [311-313].

INDICTMENTS found and returned in the Superior Court Department on April 12, 2002.

The cases were tried before *James P. Donohue,* J.

*David M. Skeels,* Committee for Public Counsel Services, for the defendant.

*Joseph Visone,* Special Assistant District Attorney, for the Commonwealth.

KATZMANN, J. Following a jury trial in Superior Court, the defendant appeals from his convictions on seven counts of

statutory rape of a child, two counts of disseminating matter harmful to a minor, and one count of indecent assault and battery. He urges two grounds for overturning the convictions. First, pointing to his pretrial police statement, in which he provided an explanation as to why the victim had accused him, he contends that his remarks constituted comment on the credibility of a witness, and that it was reversible error to permit the introduction at trial of that unredacted commentary during the police officer's testimony. He argues that this error was compounded when he was cross-examined by the prosecutor. Second, he claims error in an expert opinion's reference on cross-examination to a scientific study. We conclude that the contentions are not meritorious, and we affirm the convictions.

1. *Background.* The victim testified that over a fourteen-month period, beginning when she was seven years old, the defendant initiated about ten offensive sexual encounters with her. During that time, the victim lived with her mother, her mother's boyfriend, her brother and sister, her aunt, and her aunt's daughter. The defendant, who had an intermittent relationship with the victim's aunt, also lived in the same house as the victim.

The victim's mother and her boyfriend ordered the defendant to leave the residence when the victim informed them that she was being abused. The victim later repeated her allegations to a police officer, who testified at trial as a fresh complaint witness. The victim stated that on about ten occasions, the defendant had taken her into his room at night, locked the door, undressed her, and penetrated her, either with his finger or his penis. She also alleged that the defendant had shown her pornographic magazines and a videotape. A search of the defendant's room by police officers produced pornographic magazines and videotapes, as well as a vibrator. Two days after the search, the defendant provided a statement to the police.

At trial, the victim repeated the substance of her earlier allegations. In addition, she stated that she had been abused in both her room and the defendant's, that he had also used a vibrator that he kept in his room, and that oral and anal intercourse had taken place. On cross-examination, she testified that she wanted to make her parents and the police proud of

her, that she had practiced her testimony with the prosecution, and that she sometimes forgot things, which the prosecutor helped her remember.

The balance of the prosecution's case consisted of the physical evidence collected from the defendant's room, and the testimony of several witnesses. Besides the police officer who testified as a fresh complaint witness, another police officer, William Lawrence, testified regarding the statement the defendant had given him. A forensic pediatrician, Dr. Christine Barron, testified about the physical examination she performed on the victim. She described the injury she found, and opined that it was consistent with a penetrating injury to the vagina, and that it was exceedingly rare for such an injury to be accidental. The victim's mother also testified. She stated that the victim began having nightmares in December, 2001 (which would have been shortly after the defendant allegedly had begun abusing her). She also described an incident where she found the defendant in the victim's bedroom, and heard the defendant telling her daughter that "[y]ou are going to do it now or go downstairs or go in my room." She testified that, later that night, she opened her bedroom door to find the defendant lying on the floor in front of the door, and the victim standing in her doorway crying.

The defense was based primarily on the defendant's testimony. He denied any form of sexual contact with the victim. He admitted to owning some of the videotapes in his room, but stated that the magazines belonged to the mother's boyfriend and that he had seen the other videotapes in the attic. The defendant testified that the vibrator belonged to the victim's aunt. He also explained that he was simply saying goodbye to the victim when the mother found him in the victim's room, because he had decided to leave that night. He did not remember being found lying on the floor later that night. The defense also sought to show through cross-examination of the Commonwealth's witnesses that the victim's testimony might have been suggested by others, and that the victim's mother, who had been abused herself, was concerned that her daughter might have been abused.

2. *The defendant's statement.* The defendant urges reversible error flowing from the admission of the unredacted statement

he voluntarily made after surrendering himself into police custody.[1] He argues that the admission of offending language in the statement, combined with the subsequent cross-examination on the statement, amounted to improper comment on the credibility of the victim's testimony.

The contested question and response of the defendant in the statement, admitted during the testimony of Detective Lawrence, were:

> *Q*: "Why would [the victim] accuse you of sexually abusing her?"
>
> *A*: "I came up with two conclusions. Maybe she's mad at me. She's kind of evil and she lies a lot. The other is maybe somebody else did it."

During his defense, on direct examination, the defendant stated that he had "cooperated" with the police, that they had asked him questions, and that he had answered them. On cross-examination, the prosecutor asked the defendant to explain what he meant when he told Detective Lawrence that the complainant was "kind of evil." The defendant testified that, as he had told the police officer, he meant that the complainant "lied a lot."[2]

It is well-established, and we have repeatedly stated, that it is

---

[1]The voluntariness of the statement was not contested by the defendant. On the morning of trial, counsel filed in court a motion in limine seeking redaction of portions of the defendant's statement that commented on "the credibility of a witness." At side bar, counsel stated that he was concerned about questions referring to the defendant's "impression of the complaining witness's or other people's reactions and why they might have said what they said, in terms of their credibility." The Commonwealth informed the court that it understood counsel's concern, and opined that the parties might "well be able to come to an agreement." The judge thereupon directed that they "work that out [them]selves." When the statement was about to be offered during the police officer's testimony, and after the statement was introduced, defense counsel renewed his objection. The judge, initially interpreting the objection as pertaining to the voluntariness of the statement, ruled that the statement was admissible, but did not specifically address the merits of the redaction request. Ultimately, after the unredacted statement was introduced, the judge determined that the comment relating to credibility was "an admission, and I will let the jury assess it, and whatever significance they attach to it."

[2]When asked by the prosecution to describe the lies, the defendant said that on "numerous" occasions, not exceeding "15 or 20," he had heard the

improper to ask a witness at trial to assess the credibility of other witnesses' testimony. See, e.g., *Commonwealth* v. *Triplett*, 398 Mass. 561, 567 (1986) (*Triplett*); *Commonwealth* v. *Long*, 17 Mass. App. Ct. 707, 708 (1984) (*Long*). The purpose of the bar on credibility testimony is that "[t]he factfinder, not the witness, must determine the weight and credibility of testimony." *Triplett*, 398 Mass. at 567. Questions, and the testimony they elicit, run afoul of this prohibition when they suggest to the jury that "differences in the testimony of the witness and any other witness 'could only be the result of lying and not because of misrecollection, failure of recollection or other innocent reason.' " *Commonwealth* v. *Ward*, 15 Mass. App. Ct. 400, 402 (1983), quoting from *United States* v. *Narciso*, 446 F. Supp. 252, 321 (E.D. Mich. 1977). *Commonwealth* v. *Morris*, 20 Mass. App. Ct. 114, 119-120 (1985). Such inquiry is irrelevant, and "transforms the interrogation stage of the trial into the phase traditionally reserved for argument and summation." *Long*, 17 Mass. App. Ct. at 709-710 & n.6. Moreover, such inquiry inappropriately diverts the jury from the matter at hand — the consideration of the evidence — by pitting witness against witness for the purpose of casting the proponent in a derogatory or unsympathetic light. See, e.g., *Triplett*, 398 Mass. at 567 ("[t]he relationship between the two witnesses, that of mother and son, magnifies the prejudice caused by the improper questioning"). See also *Commonwealth* v. *DeMars*, 42 Mass. App. Ct. 788, 794 (1997) (conduct "sought to cause the jury to loathe the defendant").

In this case, the *Triplett-Long* line of cases is not implicated. Here, the police query and the resulting comment on the victim's credibility were made *before* trial during police interrogation, and only ultimately came before the jury during the interrogating officer's testimony. When the defendant gave his statement to the police, he was not testifying as a witness at trial, and he was not commenting on the testimony of another witness. This was not the equivalent of commenting on the

---

complainant falsely tell her parents that she had not snatched toys from other children. The defendant claimed that he had observed her do so. When asked if she lied about anything else, the defendant replied, "Not that I know of, no."

credibility of live testimony given by another witness under oath during the trial. The defendant's explanation to the police, as to why the victim had accused him, was properly considered by the jury as an admission, another bit of information to be used in its assessment of the charges and its ultimate determination of guilt or innocence. As such, it was properly the subject of cross-examination. *Commonwealth* v. *Bibby*, 35 Mass. App. Ct. 938, 940-941 (1993).

In any event, even if there were error, it was harmless. The record here is distinguishable from the harmful error in *Long*, where the improper cross-examination spanned over one hundred pages of transcript, see *Long*, 17 Mass. App. Ct. at 708, and closer in tenor to cases where the isolated nature of the questioning and testimony was considered to be harmless error. Compare *Ward*, 15 Mass. App. Ct. at 402; *Commonwealth* v. *Flanagan*, 20 Mass. App. Ct. 472, 478 (1985). See also *Commonwealth* v. *Kirkpatrick*, 26 Mass. App. Ct. 595, 603 (1988) (no miscarriage of justice in two improper questions to defendant). Nor was the testimony mentioned in closing argument. *Commonwealth* v. *Krepon*, 32 Mass. App. Ct. 945, 948 (1992).

Moreover, the substantial and corroborative evidence in the instant case distinguishes it from *Triplett*, where reversible error was found because the critical issue before the jury was the credibility of the defendant and his mother, and where he was asked repeatedly to call his mother a liar. See *Triplett*, 398 Mass. at 566-567. The weight of the rest of the Commonwealth's evidence supports a conclusion of harmless error. Along with the consistent testimony of the victim, the Commonwealth presented physical and testimonial evidence to corroborate the victim's story: the defendant admitted that the victim had access to his room and that she once slept in his room; the victim's mother observed two strange interactions between the defendant and the victim; the victim suffered from nightmares during the period in which she claimed the abuse occurred; police uncovered various pornographic magazines, videotapes, and a vibrator described by the victim in the defendant's room; the vibrator was found where the victim stated that it was kept; and the victim had physical injuries consistent with sexual abuse.

Taken together, the strength of the evidence supports a conclusion of harmless error. See *Commonwealth* v. *Mahdi*, 388 Mass. 679, 696-697 (1983).

3. *Dr. Barron's testimony.* The defendant takes issue with the cross-examination of the prosecution's expert witness, Dr. Barron.[3] He argues on appeal that Dr. Barron's statement describing a study in the journal Pediatrics was unresponsive, improperly touched on the ultimate question whether the victim was sexually abused, and was hearsay. He focuses on the following exchange:

> DEFENSE COUNSEL: "But this, in your opinion, was either an exceedingly rare accident or an intentional act?"

> DR. BARRON: "What I mean by exceedingly rare, in fact not just myself, but there's even a study in 1996 Pediatrics that identifies trauma to the hymen should be consistent and be considered as sexual because otherwise proven —"

---

[3]The cross-examination proceeded as follows:

| | |
|---|---|
| DEFENSE COUNSEL: | "Doctor, you testified this was a penetration injury?" |
| DR. BARRON: | "That's correct." |
| DEFENSE COUNSEL: | "Done by some act?" |
| DR. BARRON: | "Yes." |
| DEFENSE COUNSEL: | "Likely an intentional act?" |
| DR. BARRON: | "Yes. It's exceedingly rare to have an accidental penetration injury." |
| DEFENSE COUNSEL: | "It can happen." |
| DR. BARRON: | "It can happen." |
| DEFENSE COUNSEL: | "It can happen by accident, but it's exceedingly rare in your opinion." |
| DR. BARRON: | "Exceedingly rare, yes." |
| DEFENSE COUNSEL: | "But this, in your opinion, was either an exceedingly rare accident or an intentional act?" |
| DR. BARRON: | "What I mean by exceedingly rare, in fact not just myself, but there's even a study in 1996 Pediatrics that identifies trauma to the hymen should be consistent and be considered as sexual because until otherwise proven —" |

Defendant contends that it was prejudicial error to refuse to strike the testimony.

As a preliminary matter, we note that the defendant has raised two of these three objections for the first time on appeal. At trial, the defendant's objection was grounded only upon unresponsiveness. We examine that contention for the presence of prejudicial error. *Commonwealth* v. *Peixoto*, 430 Mass. 654, 660 & n.6 (2000). Because the other two arguments were not preserved at trial, we consider them only "to avoid a substantial risk of a miscarriage of justice." See, e.g., *Commonwealth* v. *Clark*, 378 Mass. 392, 397 (1979).

To set the cross-examination in context, we note that on direct examination, Dr. Barron was qualified as an expert,[4] and she testified in detail, without objection, that she had examined the victim, and she described photographic slides of the examination, which were admitted as exhibits. Testifying that she had found a fifty percent loss of hymenal tissue, she opined, without objection, that this finding was "consistent with a previously penetrating vaginal injury." In response to the prosecutor's question as to whether the injury was "consistent with an accidental injury," she testified that it was "exceedingly rare" for an injury to the hymen to be caused by anything other than an intentional penetration because there are several structures that would have to be penetrated first before the hymen was reached.

The cold transcript, devoid of the possible inflection in the voice of the cross-examining defense counsel, does not readily resolve whether Dr. Barron's answer to defense counsel's question — "But this, in your opinion, was either an exceedingly rare accident or an intentional act?" — was unresponsive to the question put to her. This question was part of a series of queries that recounted the opinion Dr. Barron had just proffered on direct examination, and more than one of those queries included the words "in your opinion." Merely by stressing the word "your,"

---

[4]Dr. Barron testified on direct examination that her credentials include certification as a pediatrician by the American Academy of Pediatrics. She also completed a fellowship in forensic pediatrics, that is the diagnosis and treatment of child abuse (sexual and physical) and neglect, at Brown University in Rhode Island. In addition, Dr. Barron is the division director for the child protection program at the University of Massachusetts Memorial Medical Center.

defense counsel's question might reasonably have been understood as: "But this, in *your* opinion, was either an exceedingly rare accident or an intentional act?" It is conceivable that taken together, these questions gave Dr. Barron the impression that defense counsel was questioning the basis of her opinion by making it seem as if this opinion had no foundation or was unique to her. Viewed in this light, her answer concerning the Pediatrics study was simply a response to his challenge to the basis of her opinion. We further note that the judge, who did have the benefit of hearing defense counsel, overruled the objection.

In any event, we conclude that even if Dr. Barron's answer was unresponsive, the mention of the Pediatrics study was harmless error. Even if the jury completely accepted Dr. Barron's fleeting description of the contents of the Pediatrics study, it did not induce the jury to conclude that it was the defendant who had abused the victim. More importantly, Dr. Barron properly stated numerous times that the injuries she observed could only have been the result of either an accident or sexual abuse. She emphasized that the chance that the injuries were caused by an accident was "exceedingly rare." Thus, the Pediatrics study did little more than reinforce a proper medical opinion, an opinion that went uncontested by the defense. Moreover, the statement regarding the study was made only once, and was not repeated or referred to during closing argument. These facts, particularly in the context of the substantial inculpatory evidence noted previously, suggest that any error "did not influence the jury, or had but very slight effect."[5] *Commonwealth* v. *Federico*, 425 Mass. 844, 852 (1997), quoting from *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 445 (1983).

Turning to the other objections to Dr. Barron's statement, newly raised on appeal, we find no substantial risk of a miscarriage of justice. With respect to the claim that the testimony impermissibly touched on an ultimate issue of fact, we take

---

[5]We also note that the judge gave a standard expert witness jury instruction, telling the jury that an expert witness's opinion was "as good as you find it to be" and that in the final analysis, applying credibility rules used to assess the credibility of a witness, "you make your own determination as to how much weight you are going to assign to her testimony."

note of several guiding principles. First, "[e]xpert testimony 'is admissible whenever it will aid the jury in reaching a decision, even if the expert's opinion touches on the ultimate issues that the jury must decide.' " *Commonwealth* v. *Federico*, 425 Mass. at 847, quoting from *Commonwealth* v. *Dockham*, 405 Mass. 618, 628 (1989). Second, although "[e]vidence of physical injury of abuse is not always available in child sexual abuse cases, . . . [it] is admissible when available." *Federico*, 425 Mass. at 851 n.12. Third, that while an expert may not opine as to whether a particular child has been raped or sexually abused, an expert may opine, after a physical examination of the victim, that a child's vaginal injuries are "consistent with" penetration. See *Commonwealth* v. *Montmeny*, 360 Mass. 526, 530 (1971) (permitting testimony that vaginal injuries were consistent with penetration, as distinguished from assertion that rape occurred); *Commonwealth* v. *Lewandowski*, 22 Mass. App. Ct. 148, 150-151 (1986). See generally *Commonwealth* v. *Federico*, 425 Mass. at 851 n.12 (discussing *Montmeny, supra*); *Commonwealth* v. *Colin C.*, 419 Mass. 54, 60 n.7 (1994) (discussing *Montmeny, supra*). Considered in light of these principles, and given the strength of the evidence, the expert's answer here did not produce a substantial risk of a miscarriage of justice.[6] The cases cited as directly controlling by the defendant, e.g., *Federico, supra*; *Commonwealth* v. *Trowbridge*, 419 Mass. 750, 758-760 (1995); and *Commonwealth* v. *Deloney*, 59 Mass. App. Ct. 47, 54-59 (2003), are distinguishable, in that they involve expert testimony in the absence of physical injury, and the impermissible linking of general behavior characteristics of abused children to the victim. With respect to the contention that Dr. Barron's fleeting summary of the Pediatrics study was hearsay in violation of the defendant's right of confrontation, we note that if invited, the response was simply her provision of a basis for her expert opinion. See *Commonwealth* v. *McNickles*, 434 Mass. 839, 856-857 (2001);

---

[6]Defense counsel's closing argument reinforces the conclusion that the expert's testimony did not impermissibly intrude on the jury's fact-finding function. He told the jury that Dr. Barron had said that the child's injury could have been an "accident," "[i]t could also happen by another intentional act, one not done necessarily by Mr. Colon or anyone we have heard from. Could have been anyone, at any time. . . . She didn't find any other injuries."

Liacos, Brodin, & Avery, Massachusetts Evidence § 7.7.4 (7th ed. 1999 & Supp. 2005). On the other hand, even if Dr. Barron's answer was hearsay, given the weight of the evidence, there was no substantial risk of a miscarriage of justice.

*Judgments affirmed.*