COMMONWEALTH *vs.* ROBERT S. KREPON. No. 91-P-390. April 28, 1992. *Rape. Practice, Criminal*, Argument by prosecutor, Conduct of prosecutor, Instructions to jury. *Witness*, Child, Credibility.

Following a jury trial, the defendant was convicted of rape of a child under sixteen, assault with intent to rape a child under sixteen, and indecent assault and battery of a child under fourteen. On appeal, the defendant claims that he was denied a fair trial as a result of the prosecutor's closing argument and unfair examination of him and certain flawed instructions to the jury by the judge. There was no such error as would cause us to reverse the defendant's judgments of conviction.

The jury could have found the following facts. The victim's mother became involved with the defendant in 1987, and, shortly thereafter, the defendant began living with her and her two children, a daughter (the victim), age eight, and a son, age eleven. After moving in with the mother, the defendant would babysit the two children three or four nights a week while she was at work. According to the victim's testimony at trial, beginning in 1987, the defendant sexually abused her while she was in his care;

the abuse continued until 1989 when she finally disclosed the defendant's conduct to her mother.[1]

1. *Arguments and instructions regarding the defendant's credibility.* The defendant argues that both the prosecutor in her closing argument and the judge in his instructions to the jury impermissibly commented on the defendant's credibility.

a. *Prosecutor's closing argument.* In her closing argument, the prosecutor made the following comments regarding the credibility of the witnesses. "Robert Krepon testified. He didn't have to, but he did. And when he testifies, just as you assess the credibility of [the victim], you assess his. You question . . . [w]hat is his motive? What's his stake in the outcome? . . . Consider, if you will, what was his stake in the outcome of this case? Ponder those questions." Defense counsel's objection in the midst of the prosecutor's closing was overruled by the judge.

The prosecutor did not overstep the bounds of acceptable argument by calling into question the defendant's credibility. A prosecutor may permissibly argue that the defendant is not a credible witness. See *Commonwealth* v. *Yesilciman,* 406 Mass. 736, 746 (1990), and cases cited. Moreover, the judge made it clear to the jury that closing arguments are not evidence and that the jury themselves were the final arbiters of the facts and the sole judges of the credibility of the witnesses and the weight to be accorded to their testimony. See *Commonwealth* v. *St. Pierre,* 377 Mass. 650, 665 (1979); *Commonwealth* v. *Achorn,* 25 Mass. App. Ct. 247, 250-251 (1988).

We also find no error in the prosecutor's comments regarding the victim's testimony. The prosecutor stated: "Now, when [the victim] testified before you she told you certain things. . . . And when she talked to you about all of those things . . . how did she appear? Did she appear to you to be a little girl capable of making this up? What reason would [the victim] have to come into this courtroom, stand on that witness stand, and testify before fourteen people about all of this if this were pure fantasy . . . ? What is her motive? Because you . . . assess the credibility of all witnesses who take that stand." Contrary to the defendant's assertions, "[t]he prosecutor did not [improperly] comment, from personal knowledge, on the credibility of a witness." *Commonwealth* v. *Lapointe,* 402 Mass. 321, 331 (1988). In the context of the entire argument and in light of the defendant's assertions that the victim did have a motive to lie, his comments "represent an argument in support of the credibility of . . . [a] key witness[],

---

[1]The victim testified that, some nights when the defendant was babysitting, she would get out of bed and go into the living room to watch television and that, while she was watching television, the defendant would put "dirty" movies on and would touch her between her legs. She testified that the defendant would put his hands under her panties, rub her between her legs, and "put his finger up [her] private spot halfway." She also testified that the defendant made her touch his private spot, kissed her on the lips, and asked her to shower with him.

based on the demeanor and motive of the witness[] and the consistency of [her] stor[y]." *Commonwealth* v. *Sanchez*, 405 Mass. 369, 377 (1989), quoting from *Commonwealth* v. *Stone*, 366 Mass. 506, 516 (1974).

b. *Jury instructions.* The defendant attacks in a piecemeal fashion the judge's instructions regarding the credibility of witnesses. Since these arguments arise for the first time on appeal, we review the instructions under the "substantial risk of a miscarriage of justice" standard. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967). In that context, we "view the charge in its entirety since the adequacy of instructions must be determined in light of their over-all impact on the jury." *Commonwealth* v. *Matthews*, 406 Mass. 380, 390 (1990), quoting from *Commonwealth* v. *Sellon*, 380 Mass. 220, 231-232 (1980).

The defendant contends that the judge erred in instructing the jury that: "With regard to credibility, one of the factors I should have reminded you of [is] that somebody is more credible, generally speaking, if they tell the same story again and again. They are less credible if there are inconsistencies in the story. However, it is up to you to consider: one, whether there are any inconsistencies; and two, to consider whether those inconsistencies are significant." Viewing the instructions as a whole, we find there was no danger that the judge unfairly bolstered the testimony of the victim here. In fact, this instruction may well have hindered the Commonwealth's case in some respects because inconsistencies in the victim's testimony were brought out by defense counsel on cross-examination and must have been apparent to the jury.

The defendant further contends that the judge's occasional use in his charge of the term "victim" rather than "alleged victim" was fatally prejudicial. We do not agree. We assume a certain degree of jury sophistication (see *Commonwealth* v. *Kozec*, 399 Mass. 514, 517 [1987]) and conclude that, in viewing the instruction in the context of the entire trial, the jury would have understood that the primary issue to be decided in this case was whether the acts alleged by the complaining witness were true. The judge was not required to repeat the word "alleged" at every turn. Cf. *Commonwealth* v. *Matthews*, 406 Mass. at 394. Parenthetically, we do point out that, although the jury understood that their role was to decide whether the acts named in the indictments actually occurred, we think the better practice in cases of this sort is to use the word "alleged" at all times when referring to a complaining witness. We say this in spite of the language contained in Model Jury Instructions For Use In The District Court § 4.13 (1988). Taking a prophylactic aproach to the fashioning of jury instructions, even without a specific request, is always the preferable course.

The defendant's final argument concerns the trial judge's failure to give, as he had requested, an instruction on the credibility of a child witness. "[A] trial judge retains discretion to determine whether the jury should receive a special instruction with respect to the credibility of a young wit-

ness, and, if so, the nature of that instruction." *Commonwealth* v. *Avery*, 14 Mass. App. Ct. 137, 141 (1982). The judge properly could have concluded that giving such an instruction would "single[] out the testimony of [the victim] for special scrutiny [and could] infringe upon the jury's exclusive role as arbiter of credibility." *Id*. at 142. We think the judge's general instructions regarding the jury's role in weighing credibility of the witnesses fairly alerted the jury to the appropriate factors to consider. See *Commonwealth* v. *A Juvenile*, 21 Mass. App. Ct. 121, 124 (1985). Nothing further was required.

2. *Cross-examination of the defendant by the prosecutor.* We are more disturbed by certain aspects of the prosecutor's cross-examination of the defendant than we are with any other issue raised on appeal. While we again find ourselves in the unfortunate (as well as uncomfortable) position of having to remind the Commonwealth to "behave itself" (*Commonwealth* v. *Felton*, 16 Mass. App. Ct. 63, 66 [1983]), we conclude that "the error[s] could not have made a difference in light of the context of the evidence adduced and the posture of the defense, that is, that the assaults and touchings had never happened." *Commonwealth* v. *Morris*, 20 Mass. App. Ct. 114, 120 (1985).

At a few different points in her cross-examination of the defendant, the prosecutor employed the tactic of questioning the defendant regarding the testimony of other witnesses. "It is improper to ask a witness to comment on the credibility of other witnesses or his own testimony." *Commonwealth* v. *Long*, 17 Mass. App. Ct. 707, 708 (1984). See *Commonwealth* v. *Johnson*, 412 Mass. 318, 328 (1992). We have pointed out before that "the use of this kind of question is also a waste of time. What the witness remembers about previous testimony is irrelevant. It is the jury's recollection of the testimony that matters." (Citation omitted.) *Commonwealth* v. *Long*, *supra* at 710 n.6. In the instant case, the questions posed by the prosecutor went to relatively minor inconsistencies in the testimony of the defendant and other witnesses rather than bearing on the central issue in the case. See *Commonwealth* v. *Richenburg*, 401 Mass. 663, 673-674 (1988). In addition, the questions were not as numerous as those in *Commonwealth* v. *Long*, 17 Mass. App. Ct. at 708, and were not emphasized by the prosecutor in her closing argument. *Commonwealth* v. *Flanagan*, 20 Mass. App. Ct. 472, 478 (1985). See also *Commonwealth* v. *Kirkpatrick*, 26 Mass. App. Ct. 595, 603 (1988). In deciding that there was no reversible error, we also take into consideration defense counsel's failure to object to these questions. "The fact that we find no prejudicial error in this case, however, should not be viewed as lessening our condemnation of the practice employed here." *Commonwealth* v. *Ward*, 15 Mass. App. Ct. 400, 402 (1983).

*Judgments affirmed.*

· *Carlo Obligato*, Committee for Public Counsel Services, for the defendant.

*James F. Lang*, Assistant District Attorney, for the Commonwealth.