## COMMONWEALTH *VS.* ANGEL RIVERA.

No. 99-P-591.

Essex. December 11, 2000. - August 20, 2001.

Present: BROWN, GILLERMAN, & DUFFLY, JJ.

*Evidence,* Relevancy and materiality, Hearsay, Cross-examination. *Practice, Criminal,* Argument by prosecutor.

At the trial of indictments charging rape and indecent assault and battery on a child, the judge did not, in the circumstances, abuse his discretion in excluding evidence that the complainant had made a prior allegation of sexual assault. [323]

At the trial of indictments charging rape and indecent assault and battery on a child, the judge did not err in excluding questions on cross-examination of the complainant about an allegation she had made that her mother had been neglecting her and that she wanted to be removed from the house in which she, her mother, and her two sisters had been living with the defendant, where there was an insufficient showing of a nexus between the excluded evidence and the defense's theory of fabrication, together with what was in the circumstances a significant passage of time. [324]

At a criminal trial, there was no substantial risk of a miscarriage of justice in various statements made by the prosecutor in closing argument that were alleged to have constituted improper vouching for the victim's credibility [324-325], misstated evidence [325-327], suggested facts not in evidence [327-328], and attacked the character of a witness [328]. BROWN, J., concurring.

INDICTMENTS found and returned in the Superior Court Department on March 20, 1996.

The cases were tried before *Robert H. Bohn,* J.

*Allison Young Beauparlant* for the defendant.

*James A. Janda,* Assistant District Attorney, for the Commonwealth.

DUFFLY, J. Convicted by a Superior Court jury of four counts of rape of a child and two counts of indecent assault and battery upon a child, the defendant appeals, claiming evidence should have been admitted that the complaining witness had made a

prior allegation of sexual assault, that his cross-examination of her was impermissibly restricted, and that the Commonwealth's closing argument was improper in several respects. We affirm the judgments.

According to the testimony of the complaining witness, Jane,[1] in January of 1990, the defendant — who had been living with Jane, her mother, and two sisters since Jane was very young, and to whom she referred throughout the trial as her "stepfather" — began coming into her bedroom late at night, after arriving home from work. Born on October 22, 1981, Jane was nine years old when the defendant began to kiss and lick or suck her "titties." Some weeks later, the defendant began to put his hands in her pants and his finger in her vagina; he also licked and put his tongue into her vagina. Jane testified that the sexual encounters, which "shocked and scared" her, took place approximately twice each week, continuing until just before her fourteenth birthday. During the encounters, Jane said she would sometimes move or turn away, but that the defendant persisted. A few times, Jane called out "Mommy." Sometimes the sexual encounters occurred while her little sister slept in the same bed as Jane, and Jane would try to kick or nudge her awake. If her sister woke up, and on one occasion when her mother came into the bedroom, the defendant would pretend he was just checking on them.

The final incident occurred in October of 1995, when, according to Jane's testimony, the defendant "put his penis in me — He pulled my pants down, and he tried to put his penis in me, and I moved." Jane said the defendant's penis was "touching my vagina," that he pushed down once or twice, and that "[i]t hurt a little bit." Just after her fourteenth birthday, Jane and the defendant had a conversation during which he asked her if she "liked what he did to [her] at nighttime." Jane testified, "I told him, 'No' and to stop. And he said, 'Okay.' And he got mad and he left." After this conversation, the defendant did not sexually touch Jane again.

Jane told no one of these incidents until around the third week of January, 1996, when she confided in her best friend,

---

[1] The name is fictitious.

who then relayed to an adult what Jane had told her. The defendant was arrested the next day.

There was no direct evidence corroborating Jane's testimony. The theory of defense was that Jane fabricated the story of sexual abuse because she resented the restrictions placed upon her by her mother and the defendant, and wished to live with her father where she was allowed to come in late, have friends over, and, most significantly, have a boyfriend. Defense counsel, expanding on this theory, argued in closing that when a person, who may have been related to the defendant, saw Jane being hugged by a boy and yelled to her that, "He's not supposed to be hugging you," Jane decided to leave her mother's house and to fabricate the tale of sexual abuse in order to accomplish this goal. She then told her best friend about the sexual abuse in order to test out her story, and so that her friend would tell others.

*Exclusion of evidence.* During cross-examination of Jane, the defendant sought to introduce a statement in Jane's medical record dated October 1, 1988, that purported to establish that Jane had previously disclosed a sexual assault to her doctor, and that her mother knew about it.[2] The defendant argues that the evidence was relevant to refuting Jane's claim that she had not disclosed the defendant's abuse earlier because she felt ashamed to do so. The defendant "fails to support his . . . argument[] [that it was error to exclude the hearsay statement] with any case or statutory law." *Commonwealth* v. *Hrycenko*, 417 Mass. 309, 319 (1994). See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). In any case, "[w]hether evidence is legally relevant is a question which is generally left to the discretion of the trial judge." *Commonwealth* v. *Chasson*, 383 Mass. 183, 187 (1981). It is within the judge's discretion to exclude evidence that is too remote in time or too speculative, *Commonwealth* v. *Freeman*, 430 Mass. 111, 116 (1999), and, here, the trial judge did not abuse his discretion.

---

[2]The medical record is handwritten and some words are not legible. The relevant paragraph is set out as follows: "[illegible] No serious illnesses/ accidents 0 allergies 0 meds, [illegible] dentist. Discussed SA - ['no' or 'wo' or 'uo'] - little boy in school last yr touched her — mom raised a fuss. PE Totally [illegible]."

*Restriction on cross-examination.* The defendant next claims it was error to exclude questions on cross-examination of Jane about an allegation she made to a teacher that her mother had been neglecting her and that she wanted to be removed from the house. Jane allegedly made this accusation when she was eight years old, i.e., "at the time that [the abuse] allegedly was beginning." According to defense counsel, "when no one believed her, she was returned to the home. And she admitted that she lied, and she was returned to the home." The defendant argues that the evidence went to the heart of Jane's motive to lie, i.e., her previous fabrication not having been enough to get her out of the defendant's house, she now had to come up with a stronger scenario, one not directed at her mother, to do the job. The defendant claims that the exclusion impermissibly curtailed his cross-examination of Jane.

We think that there was not a sufficient showing of a nexus between the excluded evidence and the defense's theory of fabrication, and that "this lack of linking evidence, together with what was in the circumstances a significant passage of time, provided sufficient grounds for the judge in his discretion to exclude [the questions] as lacking probative value." *Commonwealth* v. *Chasson*, 383 Mass. at 187. Cf. *Commonwealth* v. *Herrick*, 39 Mass. App. Ct. 291, 295 (1995) (absent evidence or basis for inquiry, it was proper to limit cross-examination of rape victim and her friend regarding a statement allegedly made by the victim to her friend that she feared a physical examination to establish her virginity; judge was warranted in concluding that such cross-examination "would only invite the jury 'to indulge in conjecture and supposition' "). There was no error.

*Improper closing argument.* The defendant claims that various statements made by the prosecutor in closing argument constituted improper vouching for the victim's credibility, misstated evidence, suggested facts not in evidence, and attacked the character of a witness. The defendant preserved some of these claims by objecting at trial.

"When a defendant objects to the prosecutor's statements made during a closing argument, the standard for determining whether a conviction must be reversed because of inappropriate statements is whether the improper statements made by the

prosecutor 'constituted prejudicial error.' " *Commonwealth* v. *Rosario*, 430 Mass. 505, 515 (1999), quoting from *Commonwealth* v. *Daggett*, 416 Mass. 347, 352 n.5 (1993).

a. *Vouching for witness's credibility.* The defendant objected at trial to the prosecutor's comment regarding Jane's testimony, that "[s]he didn't have to subject herself to the humiliation of talking to countless strangers about horribly embarrassing personal experiences in her young life."

The statement made by the prosecutor is similar to one discussed in *Commonwealth* v. *Krepon*, 32 Mass. App. Ct. 945 (1992), that we concluded did not constitute improper vouching. There, the prosecutor's closing argument included this comment on the victim's testimony: "What reason would [the victim] have to come into this courtroom, stand on that witness stand, and testify before fourteen people about all of this if this were pure fantasy . . . ? What is her motive?" *Commonwealth* v. *Krepon*, 32 Mass. App. Ct. at 946. Here, because the complainant's credibility was at issue, the prosecutor was entitled to "argue from the evidence why a witness should be believed." *Commonwealth* v. *Freeman*, 430 Mass. at 119 (citations omitted). Further the prosecutor put the argument in context by stating, "[n]ow, it is up to you to decide, in a few moments, after the judge gives you some instructions, you are going to have a chance, for the first time, . . . to decide this case on the facts and evidence that you heard." Cf. *Commonwealth* v. *Krepon*, 32 Mass. App. Ct. at 946-947.

b. *Misstatement of evidence.* During closing argument, counsel for the defendant, pointing to alleged inconsistencies in Jane's testimony, said that Jane had lied when "she said[] her mother raped her. She put her fingers inside of her vagina," and that Jane had not previously told anyone that her mother had put her fingers inside of her, suggesting that Jane was not credible. The prosecutor responded in his closing to this characterization of the evidence[3] by arguing: "Was she suggesting, in some way, that her mother was raping her? Ladies and

---

[3]During direct testimony, Jane stated that, at a point during the period the defendant was coming into her room at night and sexually touching her, her mother walked into the bedroom while the defendant was licking her vagina. The defendant pretended that he "was just checking on [her]," and left the

gentleman, common sense; what is your memory of that? What she was saying was, 'My mother saw something. It was weird. I don't know why she was doing what she was doing, but she put her hands in my pants.' " The prosecution's appeal to the jury to use "common sense," and his characterization of what Jane's testimony likely meant, was a rhetorical device, and in the context of the entire argument, was not improper. See *Commonwealth* v. *Snyder*, 10 Mass. App. Ct. 896 (1980).

The prosecutor's earlier summary of Jane's testimony in this regard was also not a misstatement. The prosecutor said that Jane had testified, "I don't know what my mother saw. All I know is, after he left the room, my mother came over and put her hands in my pants," and that she had denied, in cross-examination, saying her mother had put her fingers in her vagina, that she had put them in her pants. The jury could not have been misled into thinking that the prosecutor was giving them a verbatim quote of Jane's statements. This was not an inaccurate summary of the testimony, and it was permissible for the prosecutor to focus on those aspects of Jane's somewhat equivocal statements regarding her mother's actions. Further, the judge instructed the jury to consider only the evidence introduced at trial, and the prosecutor's comments did not impinge on their prerogative to weigh the evidence. See, e.g., *Commonwealth* v. *Kozec*, 399 Mass. 514, 517 (1987) ("A certain

___

room, while her mother "pretend[ed] that she didn't see." Jane testified that her mother then came over and "laid down in the bed with me, and she put her hand inside my pants. I don't know what she was doing. She, like, put her fingers in my vagina. She just, like, touched it. I don't know what she did. Then, she just left." When asked on cross-examination whether her mother had put her fingers in Jane's vagina, she said "Not inside of me. I didn't mean inside of me. I mean, she touched me." The prosecutor then asked, "Okay. But, you said, yesterday, that she put her fingers in your vagina?" Jane answered, "Yes."

We adhere to the notion that counsel for *both* parties may not engage in prejudicial characterizations of evidence, or argue conclusions not logically drawn from the evidence at trial. See Smith, Criminal Practice and Procedure §§ 1860-1868 (2d ed. 1983), and cases cited. See also *Commonwealth* v. *Dowdy*, 36 Mass. App. Ct. 495, 502 (1994) (Brown, J., dissenting) ("a plethora of opinions have rained down upon both defense counsel and prosecutor, warning, threatening, and admonishing" about propriety of closing arguments). Defense counsel's characterization of Jane's testimony as a claim that her mother had raped her was unwarranted, and had it come from the prosecution would rightly have given rise to a claim of prejudice.

measure of jury sophistication in sorting out excessive claims on both sides fairly may be assumed"); *Commonwealth* v. *Azar*, 32 Mass. App. Ct. 290, 308 (1992) (evidence misquoted, but error harmless because we assume some measure of jury sophistication in ability to sort out hyperbole and speculation).

c. *Facts not in evidence*. The defendant claims that the prosecutor made two arguments that were not based on evidence at trial. The defendant preserved below his claim that the prosecutor impermissibly argued at closing that Jane's mother could have gotten a ride to Boston for her daughter's counseling sessions from one of the "fifteen or so people sitting in the back of the courtroom."[4]

We agree that the prosecutor's statement strayed beyond the logical conclusions that are permissible to draw from testimony submitted at trial. *Commonwealth* v. *Freeman*, 430 Mass. at 118-119. There was nothing in the evidence to suggest that any of the people sitting in the courtroom were among those Jane's mother had asked for a ride. We note, however, that the judge instructed the jury both at the outset of trial and in his charge that a closing argument is not evidence and that the jurors were responsible for assessing the credibility of the evidence. *Commonwealth* v. *Thomas*, 401 Mass. 109, 117 (1987). Further, the comment did not go to the heart of the matter, but only to a collateral issue, i.e., that of possible bias of Jane's mother, *Commonwealth* v. *Kozec*, 399 Mass. at 518, and did not prejudice the defendant.

The defendant also claims prejudice from the prosecutor's statements that Jane's mother was in "denial" and that "she must have seen something. She could have realized what was going on, but she didn't want to believe it." The defendant did not raise this issue below.

---

[4]When asked by the prosecutor whether she recalled having failed to show up on several occasions for counseling sessions with Jane, after Jane had made the allegation of sexual abuse and had gone to live with her father, Jane's mother responded that she did not have a car and, having just learned to drive, could not drive around Boston. The prosecutor then asked, "And with all the family and with all the friends you have up here, you couldn't find anybody to give you a ride down to Boston, so you could sit in with your daughter on a counseling meeting. Is that what you're telling us?" She replied, "I didn't find nobody. Everybody works, sir."

The prosecutor's comment was an appropriate response to the closing argument of defense counsel, in which defense counsel argued that Jane's mother was a credible witness in part based on her tearful denials in response to his questions as to whether she had ever seen the defendant touch her daughter in a sexual way. The prosecutor's argument was grounded in the evidence, and permissibly focused the jury on the issue of her credibility. *Commonwealth* v. *Freeman*, 430 Mass. at 119.

d. *Attack on character of witness.* Also for the first time on appeal, the defendant raises the additional claim that the prosecutor's closing argument went too far by calling one of the defense witnesses, "nothing more than a seventeen-year-old punk; . . . a stooge who was brought in here; that he wouldn't know the truth about what was going on in that household, if it hit him across the face." The prosecutor's comment was in reference to the testimony of Jose Binet, who, testifying for the defense, said that after hearing about Jane's allegations from his mother, he had approached Jane in the school cafeteria, asked her whether the defendant "ha[d] sex with her" and that she had replied, "No." The defendant argues that the prosecutor's statements consisted of an attack on the character of the witness and that there was no evidence supporting the statements that Jose was a "punk" or a "stooge."

The prosecutor's closing argument went too far. We have cautioned counsel for the Commonwealth to avoid prejudicial name-calling. *Commonwealth* v. *Mosley*, 6 Mass. App. Ct. 451, 452-453 (1978) (referring to the defendant as a "wild animal"). See *Commonwealth* v. *Clary*, 388 Mass. 583, 592 (1983). Because the defendant failed to object to these statements at trial, our inquiry is limited "to whether they created a substantial likelihood of a miscarriage of justice." *Commonwealth* v. *Carmona*, 428 Mass. 268, 273 (1998). "In making this analysis we must view the prosecutor's remarks 'considering the argument as a whole, the judge's instructions to the jury, and the evidence produced at trial.' " *Ibid.* On this basis, we conclude there was no substantial risk of a miscarriage of justice.

*Judgments affirmed.*

BROWN, J. (concurring). Although I still adhere to the views set out in my dissent in *Commonwealth* v. *Dowdy*, 36 Mass. App. Ct. 495, 501-503 (1994) (Brown, J., dissenting), I concur, albeit reluctantly, only because I am "substantially confident that, if the [unbridled comments] had not been made, the jury verdict would have been the same." *Commonwealth* v. *Cyr*, 433 Mass. 617, 626 (2001) (citation omitted).

The instant case pushes the outer limits of what this court found permissible in *Commonwealth* v. *Krepon*, 32 Mass. App. Ct. 945, 946 (1992). I repeat my usual refrain: It is long past time for attorneys, both defense and prosecution, to have to be reminded not to stray recklessly outside the bounds of proper argument. In this regard, see *Commonwealth* v. *Redmond*, 370 Mass. 591, 597 (1976), where *twenty-five years ago* the court reversed and admonished a "prosecutor [who] repeatedly and deliberately sailed unnecessarily close to the wind."