NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-373

COMMONWEALTH

vs.

WILLIAM LOPEZ.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant appeals his convictions by a Superior Court jury, inexplicably asserting claims of error only as to portions of the indictments on which the jury acquitted him. He contends that the prosecutor committed various acts of misconduct and that the judge abused his discretion by failing to give certain instructions to the jury, all relating to the two indictments charging the defendant with attempt to disarm a police officer. Where the defendant was found guilty on the indictments only of the lesser included offense of assault and battery on a police officer, which was not inconsistent with his defense at trial,

he suffered no harm from any of the asserted errors.[1]  Moreover, we discern no improprieties in the Commonwealth's presentation of its case nor errors in the judge's instructions.  To the contrary, the record in this case reflects a conscientious and ethical prosecution, a well-conceived and ultimately successful defense, fully considered and legally sound jury instructions, and a verdict that was consistent with the evidence and the law.  Accordingly, we affirm.

Discussion.  1.  The defendant suffered no harm from any claimed errors.  The jury heard the following evidence.  In January 2021, a Massachusetts State police trooper in a fully marked cruiser clocked the defendant's car at 120 miles per hour on Route 495 at the intersection of Route 93.  The trooper pulled onto the highway and followed the vehicle for five or six miles until he caught up to the defendant as he exited the highway in Lawrence.  When the trooper activated his emergency lights and siren, the defendant cut around another vehicle, crashed into the guardrail, continued onto the lower deck of the

---

[1] The defendant was also convicted of negligent operation of a motor vehicle, failure to stop for a police officer, leaving the scene of property damage, and resisting arrest.  He conceded those charges at trial and makes no claim on appeal of ineffective assistance of counsel.  At the Commonwealth's request, the judge vacated the conviction for assault and battery on a police officer on the second indictment as duplicative of the conviction for the same charge on the first indictment.

roadway, struck the median barrier, lifted on two wheels, and spun around, coming to rest sideways across two travel lanes. The defendant ran from his car, ignoring the trooper's instructions to stop and get on the ground. When the defendant reached the guardrail, he turned toward the trooper and "raised his hands in a fighting stance." The trooper tried to place him in custody, but the defendant fought with him. The trooper and the defendant wrestled until they "ended up crashing into the guardrail together." The defendant's hands were "all over" the trooper as the two men rolled around on the ground struggling to gain control over each other. A second State police trooper arrived and shouted at the defendant to "stop resisting, give us your hands," and when the defendant failed to comply, he applied his taser to the defendant. Ultimately, the defendant was subdued and arrested.

The Commonwealth contended at trial that the defendant attempted to disarm the trooper during the struggle. The defendant conceded in his opening statement and closing argument that he was "driving quickly," "trying to run from the police," engaged in an "altercation" with the trooper in "an attempt to escape from him and to get away," "failed to stop," and "resisted arrest." However, the defendant posited that the Commonwealth lacked the necessary proof that he intended to take the trooper's service revolver or taser during the struggle.

3

His trial counsel asked the jury to "convict [the defendant] of nothing more and nothing less than what he's guilty of," and urged the jury to acquit him of attempting to disarm the trooper. The jury's verdict was exactly what the defendant requested. The errors the defendant claims in this appeal relate only to the attempt to disarm the trooper, of which the defendant was acquitted. At its most basic level, appellate jurisprudence (and, indeed, common sense) requires that to obtain relief from a conviction, a criminal defendant must be found guilty. Thus, there is no live issue that warrants reversal.

2. There was no prosecutorial misconduct. Although the defendant's claims of prosecutorial misconduct also relate to the acquitted conduct, we nevertheless address them. The defendant did not object at trial to any of the prosecutor's statements, arguments, or eliciting of testimony that he now contends violated principles of fundamental fairness.

a. Prosecutor's opening. The defendant asserts that the Commonwealth's opening statement was unnecessarily argumentative, appealed to the jury's emotions by mentioning the trooper's military service, and referred to "facts not in evidence"[2] when the prosecutor described the defendant's alleged

_____

[2] Because it precedes the evidence, an opening statement by definition refers to facts not in evidence; we take the

4

attempt to disarm the trooper.  The opening described the trooper's observations of the defendant's driving, initial interaction with the defendant, attempt to "deescalate[] his [own] use of force" by holstering his gun, and struggle with the defendant.  It also touched upon the trooper's military and law enforcement experience, during which he had "reholstered his weapon . . . over 10,000 times."  The prosecutor stated that there would be evidence that the defendant had "his hands on the right side of [the trooper's] duty belt, pulling on his radio . . . . was able to get [the trooper's] flashlight out of its holder . . . . [and] was slowly making his way across that duty belt to access every single use of force weapon [available to the trooper]."

All of these statements served "[t]he proper function of an opening" by outlining what the prosecutor "expect[ed] to be able to prove or support by evidence" (citation omitted).  Commonwealth v. Kapaia, 490 Mass. 787, 794 (2022).  We discern nothing in the opening that crossed the boundary between proper narrative and improper argument.  See Commonwealth v. Deloney, 59 Mass. App. Ct. 47, 51 (2003) (narrative opening proper so long as clear to jury that narrative is prediction of what will be established by evidence).  The references to military service

---

defendant's argument to be that the opening referred to facts that were not borne out by the evidence.

5

had an evidentiary purpose because the trooper's military and law enforcement experience was tied to the Commonwealth's theory that the trooper holstered his weapon properly before engaging with the defendant. Finally, the prosecutor's "prediction" of what would be established at trial regarding the defendant's actions while on the ground with the trooper was borne out by the evidence, even if the verdict suggests that the jury did not fully accept the Commonwealth's version of events. See id. There was nothing improper in the prosecutor's opening.

b. Prosecutor's closing. In a scattershot blast, the defendant argues that the prosecutor's closing was inflammatory, argued facts not in evidence, injected personal belief, improperly opined about the defendant's state of mind, suggested "special knowledge" of the defendant's guilt, impermissibly vouched for witnesses, and misstated the law. We see no record support for this line of attack on the prosecutor's performance.

We disagree with the defendant's contention that the prosecutor's reference to the trooper's military service and the stress he had endured in combat were inflammatory and not relevant to any material issue. The statements regarding the trooper's military service were grounded in the evidence and a fair response to the defendant's argument that the trooper improperly holstered his pistol because of the "stressors" at play during his confrontation with the defendant. See

6

Commonwealth v. Fernandes, 478 Mass. 725, 741 (2018) (prosecutor may argue forcefully for conviction based on evidence and reasonable inferences, including fairly responding to defendant's closing). The prosecutor's arguments that (1) the defendant was "going for the weapons, the things that he and anybody else with any common sense knows that if they're accessed by a suspect, that could really well and truly end this confrontation once and for all"; (2) "[j]ust because [the trooper] did not feel the defendant's hands on his gun did not mean that they weren't there"; and (3) the defendant "was struggling so violently with [the trooper] trying to rip every item out of his duty belt" did not reflect her personal belief, opinion, special knowledge, or witness vouching. These statements were based on the evidence and the reasonable inferences that could be drawn from it. See Commonwealth v. Mack, 482 Mass. 311, 322 (2019) (prosecutor entitled to marshal evidence and reasonable inferences). The prosecutor did not mention the law in her closing, let alone improperly argue it as the defendant contends. There was neither impropriety nor error in the prosecutor's closing.

c. Testimony elicited from witnesses. The defendant further argues that the prosecutor improperly elicited expert testimony that "was a generalization of the defendant's guilt" from the trooper and a State police ballistician. The trooper

7

testified that he properly holstered his firearm before interacting with the defendant and felt the defendant "yanking or manipulating" something on the right side of his duty belt during their physical struggle, which he "imagine[d]" was the defendant trying to take the gun. This was not proffered as expert testimony, nor could it reasonably be construed as such. It was simply the trooper testifying about his recollection of the altercation based on his personal observations. See Commonwealth v. Moffat, 486 Mass. 193, 200 (2020) (witnesses may testify to matters within personal knowledge); Mass. G. Evid. § 602 (2024). The expert ballistician subsequently testified that he examined the trooper's weapon, performed tests on it, determined that the "locking mechanism" was defeated, and concluded that "the pistol was slowly coming out and dragging against something." This was proper expert testimony: it related to a question at issue in the trial, relied on specialized training, and was designed to assist the jury in understanding evidence in an area where technical knowledge would be helpful. See Commonwealth v. Pytou Heang, 458 Mass. 827, 844 (2011). The defendant's expert offered similar testimony based on his own experimentation but came to a different conclusion. There was no error nor misconduct by the prosecutor in presenting this evidence.

3. Defendant's claims of error in judge's instructions. The defendant claims the judge abused his discretion by failing to give an instruction regarding inadequate police investigation. See Commonwealth v. Bowden, 379 Mass. 472, 485-486 (1980). The defendant asked the judge to give a Bowden instruction based on the failure of police to take photographs of the trooper's equipment belt, firearm, holster, and taser in the immediate aftermath of the incident, while acknowledging that it was "within the [judge's] sound discretion . . . and we [are] free to argue this even without the instruction." The defendant cites no authority to support his position on appeal that such an instruction was mandatory under the circumstances of this case. To the contrary, "[t]here was no error because the giving of such an instruction is never required." Commonwealth v. Williams, 439 Mass. 678, 687 (2003).

The defendant's argument that the judge should have set forth "separate proofs for the disparate intents required" for attempting to disarm a police officer and the lesser included offense of assault and battery on a police officer falls similarly flat. A judge's instruction is not required to "use the common-law terms, general intent and specific intent, provided that [it] explains to the jury the Commonwealth's burden on [any] specific intent element" (footnote omitted). Commonwealth v. Gunter, 427 Mass. 259, 268-269 (1998). Here,

9

the judge gave thorough and detailed instructions on the intent required to prove simple assault and battery (that the defendant "intended to touch" the trooper, "on purpose and not by accident") and on the intent required to prove attempting to disarm a police officer (that the defendant "intended to disarm [the trooper], that is, take away [the trooper's] gun in the case of one of the indictments and a taser, his taser in the case of the other indictment"). The defendant did not seek any clarification or additional instructions. There was no error.[3]

Judgments affirmed.

By the Court (Massing, Walsh & Brennan, JJ.[4]),

*Paul Little*

Clerk

Entered: March 21, 2025.

---

[3] The defendant also asserts error in the judge's failure to allow his motions for required finding on the charges of attempting to disarm a police officer. Where the jury acquitted him of the charges, we need not address this claim.

[4] The panelists are listed in order of seniority.

10